UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

ERIKA LUCEUS  :
                           :
    v.                      :    C.A. No. 15-489ML
                           :
STATE OF RHODE ISLAND,  :
et al.  :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Pending before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B)) is Defendants State of Rhode Island and Rhode Island Department of Labor and Training's (the "State Defendants") Motion for Judgment on the Pleadings pursuant to Rule 12(c), Fed. R. Civ. P. (Document No. 31). Plaintiff opposes the Motion. (Document No. 37). For the following reasons, I recommend that Defendants' Motion be GRANTED in part and DENIED in part as specified herein.

**Background**

Plaintiff commenced this action on November 17, 2015 by filing a two-count Complaint against the State Defendants alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (Document No. 1). In Count I, Plaintiff alleged that the State Defendants' reliance on nepotism to make hiring and promotional decisions resulted in a "disparate impact on African Americans, such as Plaintiff." Id. at p. 5. In Count II, Plaintiff alleged that she was unlawfully retaliated against because of her complaints about the impact of such nepotism. Id.

at pp. 6-7. The State Defendants answered the Complaint on December 29, 2015. (Document No. 4).

On May 25, 2016 and June 24, 2016, Plaintiff filed separate Motions to Amend her Complaint. (Document Nos. 11 and 16). The first Motion sought leave to add five individual Defendants employed by the State who were allegedly responsible decision makers. (Document No. 11 at p. 2). The second Motion sought leave to add additional claims of intentional race discrimination and a new count alleging entitlement to punitive damages. (Document Nos. 16 and 17). After hearing, Plaintiff was conditionally granted leave to file an Amended Complaint. See Text Order entered July 26, 2016. On August 19, 2016, the State Defendants answered Plaintiff's Amended Complaint.[1] (Document No. 25). The State Defendants subsequently filed the instant Motion for Judgment. (Document No. 31).

**Standard of Review**

The State Defendants move for judgment on the pleadings under Fed. R. Civ. P. 12(c). A motion under Rule 12(c) will "ordinarily warrant the same treatment" as a motion to dismiss for failure to state a claim under Rule 12(b)(6). Collier v. City of Chicopee, 158 F.3d 601, 602 (1st Cir. 1998); Frappier v. Countrywide Home Loans, Inc., 750 F.3d 91, 96 (1st Cir. 2014) (noting that "standard of review of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6)"). Thus, under Rule 12(c), the Court must construe the complaint in the light most favorable to the plaintiff, see Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994); taking all well-pleaded

---

[1] The individual Defendants have not yet answered the Amended Complaint, and the status of service of process is unclear from the docket.

allegations as true and giving the plaintiff the benefit of all reasonable inferences, see Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002); Carreiro v. Rhodes Gill & Co., 68 F.3d 1443, 1446 (1st Cir. 1995). If under any theory the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied. Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994).

While a complaint need not contain detailed factual allegations in order to withstand dismissal, a plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted) see also Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 43 (1st Cir. 2013) ("conclusory allegations that merely parrot the relevant legal standard are disregarded, as they are not entitled to the presumption of truth.").

"The complaint must allege 'a plausible entitlement to relief' in order to survive a motion to dismiss." Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008) (quoting Twombly, 550 U.S. at 559). See also Ashcroft v. Iqbal, 556 U.S. 662, 679 ("[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief"). The Court of Appeals has cautioned that the "plausibility" requirement is not akin to a "standard of likely success on the merits," but instead, "the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor." Sepulveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010).

Moreover, "[t]he court's assessment of the pleadings is context-specific, requiring the court 'to draw on its judicial experience and common sense.' ...Where the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not shown – that the pleader is entitled to relief." Camilo v. Nieves, Civ. No. 10-2150 (DRD), 2013 WL 6632801, * 6 (D.P.R. Dec. 16, 2013) (quoting Iqbal, 556 U.S. at 680) (internal quotations and alterations omitted).

**Discussion**

    **A.**    **The July 26, 2016 Order**

As previously noted, the Court conditionally granted Plaintiff's untimely Motions to Amend her Complaint on July 26, 2016. The conditions included a requirement that Plaintiff "file a revised Amended Complaint...which does not present any new claims beyond those asserted in the previously presented proposed amended pleadings and which complies with Rules 8(a) and 10 by clearly and plainly stating each distinct legal theory in a separate paragraph or count and clarifying the specific nature of relief sought from the State as opposed to the individual defendants;" and that Plaintiff "not reassert Count III which makes a general claim for punitive damages unless she pleads specific facts supporting a plausible claim for the award of punitive damages beyond the conclusory allegations previously asserted."

The State Defendants contend that Plaintiffs' Second Amended Complaint violates the above-referenced Order "in nearly every respect" and that the Court should dismiss the case or strike the Second Amended Complaint in its entirety. (Document No. 31-1 at pp. 5-9). First, as to the punitive damages condition, Plaintiff's Second Amended Complaint does not contain a stand-alone count making a general and conclusory claim for punitive damages as did the earlier proposed versions. Rather, her prayer for relief seeks punitive damages as to the claims for

intentional discrimination[2] and retaliation. (Document No. 24 at pp. 16-17). Plaintiff alleges statutory violations that may legally support an award of punitive or exemplary damages, and the Second Amended Complaint contains additional factual allegations which at least state a plausible claim for punitive damages. Thus, Plaintiff has sufficiently complied with the July 26, 2016 Order as to her claim for punitive damages.

Second, as to the pleading condition, Plaintiff has also sufficiently complied with one exception. Plaintiff's Second Amended Complaint references 42 U.S.C. § 1983 in its introductory paragraph and purports to bring a claim thereunder. (Document No. 24 at p. 1). However, neither of Plaintiff's previously presented proposed amended pleadings contain any claims brought under Section 1983. (See Document Nos. 11-1 and 17). Therefore, it is a "new claim" in contravention of the July 26, 2016 Order, and it is stricken from the Second Amended Complaint. The State Defendants also make a similar argument in support of striking Plaintiff's reference to 42 U.S.C. § 1988 for the first time in her Second Amended Complaint. While technically accurate, the Court does not view the reference as a "new" claim. The previously presented proposed amended pleadings included a claim brought under 42 U.S.C. § 1981 and sought an award of "costs of litigation including reasonable attorney fees." Section 1988 does not provide a stand alone substantive cause of action. Rather, it is a remedial provision that gives this Court the discretion to award attorneys' fees to a prevailing party in certain actions including one brought under Section 1981. See 42 U.S.C. § 1988(b). Accordingly, the Court only strikes from Plaintiff's Second Amended Complaint any claim for relief brought under Section 1983.

---

[2] Plaintiff does not, and cannot as a matter of law, seek punitive damages for her claims of disparate impact, i.e., unintentional discrimination.

**B.     Failure to Exhaust**

The State Defendants contend that Plaintiff has not exhausted her administrative remedies as to disparate treatment discrimination claims under either Title VII or Rhode Island's Fair Employment Practices Act ("FEPA") and that such claims should be dismissed. It is undisputed that Plaintiff's initial Complaint in this Court alleged only disparate impact race discrimination and that Plaintiff's Second Amended Complaint now also includes claims of disparate treatment or intentional race discrimination. (See Document No. 1 at pp. 5-6; and Document No. 24 at pp. 13-14). The State Defendants also accurately point out that Plaintiff's counsel represented to the Court during the July 26, 2016 hearing on Plaintiff's Motions to Amend that the evidence of knowledge obtained during discovery "transformed the case from disparate impact into disparate treatment or at least entitled Plaintiff to argue dual theories." (Document No. 32 at p. 6). The State Defendants argue that this representation by counsel should judicially estop Plaintiff from now arguing that her initial administrative charge of discrimination included a claim of disparate treatment. (Document No. 31-1 at p. 13, n.5).

It is well established that Title VII requires exhaustion of administrative remedies prior to the commencement of a lawsuit in Federal Court. Jensen v. Frank, 912 F.2d 517, 520 (1st Cir. 1990).[3] The general purpose underlying the administrative exhaustion requirement is to provide the employer with prompt notice of the claim and an opportunity for early resolution. See Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996); and Martinez v. Potter, 347 F.3d 1208, 1211 (10th Cir. 2003). "The scope of the civil complaint is accordingly limited to the charge

---

[3] Exhaustion is also required under FEPA, and the Court looks to case law regarding exhaustion under Title VII to determine the issue under both Title VII and FEPA. See, e.g., Baez v. Elec. Boat Corp., C.A. No. 15-509S, 2016 WL 3976359 at *2 (D.R.I. May 16, 2016).

filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." Fantini v. Salen State Coll., 557 F.3d 22, 26-27 (1st Cir. 2009). However, "[a]n administrative charge is not a blueprint for the litigation to follow" and "[w]hat can 'reasonably be expected to grow out of the charge of discrimination' must be determined by considering 'the plain import of the administrative charge as a whole' and 'the breadth of the administrative inquiry reasonably required to investigate the charge.'" Gonzalez-Rodriguez v. Potter, 605 F. Supp. 2d 349, 361 (D.P.R. 2009) (quoting Powers v. Grinnell Corp., 915 F.2d 34, 38 (1st Cir. 1990)). The Courts have cautioned against taking an "overly technical approach" in applying exhaustion requirements which might impede Title VII's goal of eradicating workplace discrimination. See Adams v. Dist. of Columbia, No. 09-2459 (RMU), 2010 WL 3831686 at *9 (D.D.C. Sept. 28, 2010); and Malone v. Lockheed Martin Corp., No. 07-65-ML, 2009 WL 304275 at *7 (D.R.I. Feb. 6, 2009) (citing Love v. Pullman Co., 404 U.S. 522, 526 (1972)).

First, the Court is disinclined to decide this issue on grounds of judicial estoppel. While it is apparent that Plaintiff's counsel initially presented this case to the Court as a claim for disparate impact and only sought to expand it to disparate treatment after conducting discovery, that strategic decision is not necessarily dispositive of the exhaustion issue. Rather, the analysis must and will focus on the content and scope of the administrative discrimination charge filed by Plaintiff herself in 2014. In her administrative submissions, Plaintiff clearly did not pigeonhole this case as one claiming only disparate impact. In fact, the term "disparate impact" was not used by Plaintiff in presenting her administrative charge of discrimination. (See Document Nos. 37-2 and 37-7). She identified her claim as one for "discriminatory treatment" and a "discriminatory work environment." (Document No. 37-2 at p. 2). She requested an investigation into

"discriminatory hiring practices" and alleged that her work environment has become "racially hostile" due to her "attempts to challenge the selection/hiring practices." Id. at p. 4. Plaintiff's administrative submissions were more than sufficient to put the State Defendants on notice as to her broad allegations of discriminatory treatment and retaliation. Thus, Plaintiff has adequately exhausted her administrative remedies as to the discrimination theories pled in her Second Amended Complaint.

### C.     Technical Defects

The State Defendants also argue that Plaintiff failed to exhaust her administrative remedies under both Title VII and FEPA because her administrative discrimination charge was defective. In particular, they contend that Plaintiff's charge was not made under oath or penalty of perjury as required. In addition, the State Defendants contend that Plaintiff's FEPA claims should be dismissed because she failed to obtain a Right to Sue Letter from the Rhode Island Commission for Human Rights ("RICHR") as required by R.I. Gen. Laws § 28-5-24.1(a).

First, as to the affirmation requirement, it appears that Plaintiff's statement of discrimination contains her notarized signature. (Document No. 37-2 at p. 4). While a notarized signature is not the equivalent of an oath or affirmation, the State Defendants do not cite any case law for the proposition that this technical deficiency constitutes a failure to exhaust. Plaintiff counters that dismissing this case on such grounds would be an injustice since she was proceeding pro se at that stage of the proceedings and received the assistance of the RICHR in preparing the charge. The Court agrees. In addition, neither the EEOC nor the RICHR rejected her charge for such reason. Both agencies processed the charge and ultimately granted Plaintiff a Right to Sue Notice which suggests that they did not find the charge to be defective.

Second, as to the Right to Sue Letter, Plaintiff received a Right to Sue Notice dated September 29, 2015 from the EEOC. (Document No. 31-7 at p. 2). Plaintiff concedes that she did not obtain a Right to Sue Notice from the RICHR prior to commencing this action. However, Plaintiff contends that this is a "curable defect" and that she cured it by obtaining a Right to Sue Notice from the RICHR on October 20, 2016. (Document No. 37-7 at p. 2).

Neither side cites any case law under FEPA as to whether or not this is a "curable defect." Plaintiff cites case law under Title VII which provides that "'the failure to obtain a right-to-sue letter prior to the commencement of a suit is a curable defect.'" Martin v. Central States Emblems Inc., 150 Fed. Appx. 852, 853 n.3 (10th Cir. 2005) (quoting Jones v. Am. State Bank, 857 F.2d 494, 499 (8th Cir. 1988)). Moreover, the Court in Edwards v. Occidental Chem. Corp., 892 F.2d 1442, 1445 n.1 (9th Cir. 1990), held that a "Title VII complainant may file an action prior to receiving [a] right to sue letter, provided there is not evidence showing that the premature filing precluded the state [agency] from performing its administrative duties or that the defendant was prejudiced by such filing." There is no such evidence in this case. Further, in the absence of any controlling precedent under FEPA and the clear precedent under Title VII,[4] the Court concludes that the subsequently obtained RICHR Right to Sue Notice cured Plaintiff's premature filing of a claim under FEPA under the particular circumstances presented in this matter.

**D.     Eleventh Amendment**

---

[4] This Court routinely applies the same analysis to claims brought under Title VII, FEPA and RICRA. See, e.g., Ferro v. R.I. Dep't of Transp., 2 F. Supp. 3d 150, 157 (D.R.I. 2014).

The State Defendants' final argument is that Plaintiff's state law claims under FEPA and RICRA[5] are barred by the Eleventh Amendment to the United States Constitution. The Eleventh Amendment provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Supreme Court has construed the Eleventh Amendment to make unconsenting States immune from suits brought in Federal Court by their own citizens as well as by citizens of another state. See Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990). However, such immunity is not absolute as States may consent to suit in Federal Court and, in certain cases, Congress may abrogate the States' sovereign immunity. Id.

The State Defendants here argue that they have not expressly waived Eleventh Amendment immunity as to Plaintiff's state law claims against them under either FEPA or RICRA. Thus, they argue for dismissal of such claims as to them. See, Kentucky v. Graham, 473 U.S. 159, 169 (1985) ("absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court").

Plaintiff counters that the State Defendants' argument is "erroneous" and that the State has consented to suit in Federal Court under both FEPA and RICRA. Plaintiff relies primarily upon Marrapese v. State of R.I., 500 F. Supp. 1207 (D.R.I. 1980), which does not address the issue in the context of either FEPA or RICRA. Rather, the Court in Marrapese construed Rhode Island's Tort Claims Act (R.I. Gen. Laws § 9-31-1) to constitute a waiver of Eleventh Amendment

---

[5] RICRA is the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1.

immunity in cases under 42 U.S.C. § 1983 in which the alleged constitutional violation arises from activities that are in the nature of tort at common law. 500 F. Supp. at 1209.[6] Accordingly, Marrapese is neither on point or controlling as to the issue presented.

The test for determining whether the State has waived its Eleventh Amendment immunity from suit in Federal Court is "a stringent one." Bergemann v. State of R.I., 676 F. Supp. 2d 1, 5 (D.R.I. 2009). "Consequently, a state will be deemed to have waived its immunity 'only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction.'" Id. (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 254 (1985)).

Here, Plaintiff presents no controlling precedent construing this issue under either FEPA or RICRA,[7] and does not identify any expression of an Eleventh Amendment waiver by the State sufficient to meet the applicable standard. In fact, Plaintiff misinterprets the applicable standard and argues that waiver is evidenced by the fact that the General Assembly "chose not to assert any state-related immunity" when it passed RICRA. (Document No. 37-1 at p. 18) (emphasis added). However, as previously noted, the applicable standard is a "stringent one" and requires that a state's consent to suit in Federal Court be "unequivocally expressed," and Plaintiff has not pointed to any such affirmative expression of waiver and consent in either FEPA or RICRA. See

---

[6] In Della Grotta v. State of R.I., 781 F.2d 343, 346 (1st Cir. 1986), the Court of Appeals questioned whether the wording of § 9-31-1 was sufficient to meet the strict standard for Eleventh Amendment waiver. However, it ultimately deferred to an earlier opinion of the Rhode Island Supreme Court finding waiver. Id. (citing Laird v. Chrysler Corp., 460 A.2d 425 (R.I. 1983)).

[7] There is, however, long-standing precedent in the District of Massachusetts that the Commonwealth of Massachusetts has not waived Eleventh Amendment immunity as to its version of FEPA (Mass. Gen. Laws ch. 151B). See, e.g., Claudomir v. Commonwealth of Mass., No. 15-CV-12867-IT, 2016 WL 492754 at *3 (D. Mass. Feb. 8, 2016); and Moorer v. Dep't of Social Servs., No. 08-11584-MLW, 2010 WL 3258609 at **6-7 (D. Mass. Jan. 25, 2010).

Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 (1984). Accordingly, the Court concludes that Plaintiff has not shown that the State has waived Eleventh Amendment immunity from suit in Federal Court as to her claims under either FEPA or RICRA, and recommends that such state law claims be dismissed without prejudice.

**Conclusion**

For the foregoing reasons, I recommend that the State Defendants' Motion for Judgment on the Pleadings (Document No. 31) be GRANTED in part and DENIED in part. In particular, I recommend that Plaintiff's claims under 42 U.S.C. § 1983, FEPA (R.I. Gen. Laws § 28-5-1, et seq) and RICRA (R.I. Gen. Laws § 42-112-1) be DISMISSED without prejudice.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
December 13, 2016